

**FILED**
**Oct 11, 2018**
**10:14 AM(CT)**
**TENNESSEE COURT OF**
**WORKERS' COMPENSATION**
**CLAIMS**



# TENNESSEE BUREAU OF WORKERS' COMPENSATION
# IN THE COURT OF WORKERS' COMPENSATION CLAIMS
# AT NASHVILLE

| | | |
|---|---|---|
| Anthony Frizzell,<br>　　　　Employee, | ) | Docket No. 2018-06-0636 |
| v. | ) | |
| Tin Roof Acquisition Co., LLC,<br>　　　　Employer, | ) | State File No. 87883-2018 |
| And | ) | |
| ZNAT Insurance,<br>　　　　Carrier. | ) | Judge Kenneth M. Switzer |

---

## EXPEDITED HEARING ORDER GRANTING TEMPORARY DISABILITY BENEFITS (DECISION ON THE RECORD)

---

This case came before the Court on October 9, 2018, on Anthony Frizzell's Request for Expedited Hearing based on the present record. Tin Roof agreed to this review. The Court finds that it needs no additional information to make a decision on the record without an in-person hearing.[1] The current issue is whether Mr. Frizzell is entitled to temporary partial disability benefits and if so their duration. For the reasons below, the Court holds he is entitled to benefits from January 25 through August 13, 2018.

### History of Claim

This is Mr. Frizzell's second expedited hearing. After the first hearing, the Court ordered Tin Roof to authorize surgery but denied his request for temporary partial disability benefits because he did not introduce proof of restrictions. For this hearing, Mr. Frizzell filed additional medical evidence along with the transcript from the first hearing.

To briefly recap, Mr. Frizzell worked as security manager for Tin Roof, a bar in

---

[1] The Court issued a docketing notice on October 4 identifying all items to be reviewed. Both parties represented to the Court that they did not intend to submit objections to the proposed documents for consideration or additional position statements. Based on that representation, the Court issues this order before the docketing notice deadline for filing additional information.

downtown Nashville. On October 28, 2017, while checking IDs at the door, he became involved in an altercation with several customers, injuring his head, shoulders and neck. Tin Roof did not offer any evidence or argument contesting the work-relatedness of the incident and Mr. Frizzell's resulting injuries.

Initially a nurse practitioner issued a statement that Mr. Frizzell should remain off work until further notice. Tin Roof began making disability payments. Mr. Frizzell testified that, at some point in early or mid-December, he received restrictions from a neurologist. Neither party offered proof of the extent of these restrictions at the first expedited hearing or this hearing. Tin Roof offered light-duty work checking patrons' IDs before they are allowed into the venue. Mr. Frizzell declined the offer. Tin Roof stopped paying temporary disability benefits on December 21. The parties disagreed over whether Mr. Frizzell acted reasonably in declining the light-duty. Testimony revolved around the duties of ID checkers.

Mr. Frizzell conceded he did not attempt to return to work checking IDs. He agreed on cross-examination that a fear of "what might happen" was his basis, explaining that he was working the door when he became injured. Ex. 24 at 59. Mr. Frizzell stated that fights, and/or a customer becoming belligerent are common: "[I]t happens regularly, consistently that those physical altercations are happening with any number of staff." *Id.*

According to Mr. Frizzell, when working the door:

[B]asically you need somebody up there who, you know, has the size and the strength to be able to stop somebody from physically entering the premises[.] . . . [T]hey could be 5 foot 2, you know, little old lady . . . [or] . . . a 6 foot 6, you know, football player that, you know, wants to come in and, you know, be rowdy[.] . . . You have to be able to, you know, stop them from entering the premises, you know, whatever those physical requirements[.]

*Id.* at 34.

He further stated that it was "not uncommon" for persons in line to "become confrontational with the door guy." *Id.* at 36. Mr. Frizzell estimated that on a weekend, the door staff turns away twenty-five persons, and on an average weeknight perhaps five. He agreed with his counsel's characterization that ID checkers are "the front line." *Id.* at 38. Typically the door work is a "two-man contingent." *Id.* at 65. When two persons are not working the door, Mr. Frizzell conceded that he could call for help but said help might not arrive right away. On redirect, he said that he felt "completely" hindered in his ability to protect himself if a physical altercation were to occur, explaining: "I'm unable to lift my right arm to protect, you know, basically that entire right side. I have limited head movement, you know, basically to avoid, you know, an attack or stop an attack."

2

*Id.* at 72.

Tin Roof offered contrary testimony from its co-general managers.

Kristen Washington testified that the door position is not physically demanding and that other Tin Roof employees worked light-duty checking IDs. Ms. Washington explained: "You can just basically sit in front of the door and just check IDs. There's another door person with you that checks in and out the line. So if anything were to happen people could still go to them and be like, what's going on, you know." *Id.* at 82. She said the job does not involve active participation in breaking up fights. She acknowledged that sometimes the door person works solo but said they have radios to call for help when needed.

Similarly, Ryan Van Rensburge testified that the door job does not require heavy lifting or breaking up fights. He acknowledged that Monday through Wednesday, an ID checker works alone and that it is not unusual for would-be patrons to be drunk, disorderly and belligerent. However, Mr. Van Rensburge said help would be available if a fight or altercation ensued; ID checkers wear earpieces connected to radios to call for assistance.

After the December offer of light-duty, Mr. Frizzell started seeing Dr. Juris Shibyama for authorized treatment. On January 25, 2018, Dr. Shibyama restricted him to a "sitting job only" with no overhead work, no outstretched use of arm or outstretched lifting; no squatting, kneeling, climbing, stooping, bending or twisting. He further wrote, "Cannot be in any situation where an altercation may take place, basically can do desk paperwork only." Mr. Frizzell returned to Dr. Shibyama on February 20. The WorkLink Physician Report contains the same restrictions except for avoiding situations where an altercation might occur. That restriction does not appear in any other medical record.

Mr. Frizzell sought temporary partial disability benefits from December 21 until the present. Tin Roof argued he did not act reasonably in declining its light-duty position checking IDs.[2] The parties agreed his weekly compensation rate is $473.17.

**Findings of Fact and Conclusions of Law**

Mr. Frizzell must present sufficient evidence that he is likely to prevail at a hearing on the merits. *See* Tenn. Code Ann. § 50-6-239(d)(1) (2018); *McCord v. Advantage Human Resourcing*, 2015 TN Wrk. Comp. App. Bd. LEXIS 6, at \*7-8, 9

---

[2] Tin Roof additionally argued that Mr. Frizzell's April 2018 discharge from pain management and an inability to recall the reason for his discharge at the expedited hearing diminish his credibility. It submitted records showing that drug-testing revealed substances other than those the physician prescribed. The Court sees little connection between the December events and the pain-management incident and rejects this argument.

3

(Mar. 27, 2015).

Mr. Frizzell requested temporary partial disability benefits. Temporary partial disability refers to the time, if any, during which the injured employee is able to resume some gainful employment but has not reached maximum recovery. *Frye v. Vincent Printing Co.,* 2016 TN Wrk. Comp. App. Bd. LEXIS 34, at *15-16 (Aug. 2, 2016). Temporary restrictions assigned by physicians during an injured worker's medical treatment do not establish an entitlement to continued temporary disability benefits if the employee is able to work without loss of income. *Id.* at *16.

The analysis of whether an employee is entitled to temporary partial disability benefits when offered light-duty work depends on the reasonableness of the employer's attempt to return the employee to work and the reasonableness of the employee in declining the offer. *Id.* Moreover, "an employee's subjective belief that [he] will be unable to perform the assigned job duties, standing alone, is not a reasonable basis upon which to award disability benefits." *Id.* at *18. Ultimately, "[t]he resolution of what is reasonable must rest upon the facts of each case and be determined thereby." *Id.*

As an initial matter, the Court found no proof of restrictions at the first expedited hearing. Afterward when supplementing the record, the first proof from a medical doctor of Mr. Frizzell's restrictions is the January 25, 2018 record from Dr. Shibyama. Before that, the Court only has Mr. Frizzell's testimony that a physician assigned light-duty restrictions in December. Without office notes to document those restrictions, the Court cannot award temporary partial disability benefits for the period before January 25.

Notably, the January 25 restrictions explicitly state that Mr. Frizzell must avoid altercations. Without explanation, however, notes from the next visit on February 20 do not mention that particular restriction. The Court cannot speculate as to Dr. Shibyama's reasoning for this. The Court finds that the other restrictions assigned would not be violated solely by checking IDs at the door. However, the Court finds that checking IDs at the door involves more than simply verifying the identification. The task also comes with the reasonable expectation of physical exertion that would violate the restrictions.

Turning now to reasonableness of the actions of both parties, the Court finds it reasonable that Mr. Frizzell would be fearful to some degree to return to checking IDs—the very task he was performing when he suffered a fairly significant injury. He further testified that he did not feel able to adequately defend himself if a fight were to start. Mr. Frizzell offered compelling insight into the potential hazards of turning away would-be patrons at the door who might be drunk, disorderly or belligerent. The parties did not dispute that on weekdays, when checking IDs, Mr. Frizzell might be left alone at the door.

4

Ms. Washington and Mr. Van Rensburge testified that help would be available in the event that someone at the door should become violent. Specifically, Mr. Van Rensburge stated that door personnel wear ear pieces connected to radios when they need help. Mr. Frizzell never addressed this fact but merely said that help was not always readily available when needed. Further, Ms. Washington testified that others with light-duty restrictions performed the same job without any problems, but she provided no specifics.

From January 25 through February 20, Dr. Shibyama specifically restricted Mr. Frizzell only to desk work and to avoid a situation where an altercation might take place. Working the door and checking IDs is a place where an altercation might occur. The Court finds that Tin Roof's December light-duty offer did not accommodate Mr. Frizzell's restrictions in that regard. For unexplained reasons, that same restriction does not appear in the February 20 note. However, all of the other restrictions continued. The Court does not have to speculate to conclude that, should an altercation occur, the remaining restrictions would likely be violated as well. Since the Court finds that a reasonable expectation of significant physical exertion exists in the ID-checking position, the only conclusion possible is that the light-duty offer did not accommodate Mr. Frizzell's restrictions after February 20 as well.

The Court holds Mr. Frizzell is likely to prevail on a hearing on the merits that he is entitled to temporary disability benefits from January 25 to August 13, 2018, the date of the first expedited hearing order.[3] This is 200 days times the compensation rate of $473.17 per week or $67.59 daily, totaling $13,519.14.

**IT IS, THEREFORE, ORDERED** as follows:

1. Mr. Frizzell's request for temporary partial disability benefits is granted in the lump-sum amount of $13,519.14.

2. This case is set for a Scheduling Hearing on **December 17, 2018, at 9:15 a.m. Central Time.** The parties must call 615-532-9552 or toll-free at 866-943-0025 to participate in the Hearing. Failure to call may result in a determination of the issues without the parties' participation.

3. Unless interlocutory appeal of the expedited hearing order is filed, compliance with this Order must occur no later than seven business days from the date of entry of this Order as required by Tennessee Code Annotated section 50-6-239(d)(3). The Insurer or Self-Insured Employer must submit confirmation of compliance

---

[3] Following the first expedited hearing, the Court ordered Tin Roof to authorize surgery. It did not appeal. On this record, the Court does not know when or if surgery has occurred and how it would alter the restrictions. Therefore, the Court limits its order to the above timeframe.

with this Order to the Bureau by email to WCCompliance.Program@tn.gov no later than the seventh business day after entry of this Order. Failure to submit the necessary confirmation within the period of compliance may result in a penalty assessment for non-compliance. For questions regarding compliance, please contact the Workers' Compensation Compliance Unit via email at WCCompliance.Program@tn.gov.

**ENTERED October 11, 2018.**

**JUDGE KENNETH M. SWITZER**
**Court of Workers' Compensation Claims**

## APPENDIX

Documents considered:
1. Petition for Benefit Determination
2. Subpoenas-medical providers (no return on service)
3. Employee's pre-mediation position statement
4. Wage statement
5. C-42 Choice of Physician form (undated, no selection or signature)
6. Dispute Certification Notice
7. Request for Scheduling Hearing
8. Notice of Scheduling Hearing
9. Order
10. Request for Expedited Hearing
11. Affidavit of Anthony Frizzell
12. Notice of Expedited Hearing
13. Employer's Witness and Exhibit List
14. Employer's Response to Request for Expedited Hearing
15. Affidavit of Kristin Washington
16. Affidavit of Ryan Janse Van Rensburge
17. Medical records (Employer)
    a) TOA, July 11, 2018
    b) Causation letter, July 12, 2018
18. Text messages
19. Expedited Hearing Order
20. Notice of Scheduling Hearing
21. Surgery authorization

22. Request for Expedited Hearing (Decision on the Record)
23. Medical records (Employee)
    a) Vanderbilt Health, off-work slip, November 8, 2017
    b) TOA, January 25, 2018, February 20, 2018, September 10, 2018
24. Transcript, August 9, 2018
25. Employee's Brief for Request for Expedited Hearing
26. Employer's Response to Second Request for Expedited Hearing
27. Medical records (Employer)
    a) Molecular Testing Labs, March 7, 2018
    b) TOA, April 4, 2018

## CERTIFICATE OF SERVICE

I certify that a copy of the Expedited Hearing Order was sent to these recipients by the following methods of service on October 11, 2018.

| Name | Certified Mail | First Class Mail | Email | Service sent to: |
| --- | --- | --- | --- | --- |
| Cole Rogers, Employee's attorney | | | X | crogers@rogerslawtn.com |
| Connor Sestak, Employer's attorney | | | X | csestak@morganakins.com; plunny@morganakins.com |

Penny Shrum, Clerk of Court
WC.CourtClerk@tn.gov

7



<u>Expedited Hearing Order Right to Appeal</u>:

If you disagree with this Expedited Hearing Order, you may appeal to the Workers' Compensation Appeals Board. To appeal an expedited hearing order, you must:

1. Complete the enclosed form entitled: "Expedited Hearing Notice of Appeal," and file the form with the Clerk of the Court of Workers' Compensation Claims *within seven business days* of the date the expedited hearing order was filed. When filing the Notice of Appeal, you must serve a copy upon all parties.

2. You must pay, via check, money order, or credit card, a **$75.00 filing fee** *within ten calendar days* after filing of the Notice of Appeal. Payments can be made in-person at any Bureau office or by U.S. mail, hand-delivery, or other delivery service. In the alternative, you may file an Affidavit of Indigency (form available on the Bureau's website or any Bureau office) seeking a waiver of the fee. You must file the fully-completed Affidavit of Indigency *within ten calendar days* of filing the Notice of Appeal. **Failure to timely pay the filing fee or file the Affidavit of Indigency will result in dismissal of the appeal.**

3. You bear the responsibility of ensuring a complete record on appeal. You may request from the court clerk the audio recording of the hearing for a $25.00 fee. If a transcript of the proceedings is to be filed, a licensed court reporter must prepare the transcript and file it with the court clerk *within ten business days* of the filing the Notice of Appeal. Alternatively, you may file a statement of the evidence prepared jointly by both parties *within ten business days* of the filing of the Notice of Appeal. The statement of the evidence must convey a complete and accurate account of the hearing. The Workers' Compensation Judge must approve the statement before the record is submitted to the Appeals Board. If the Appeals Board is called upon to review testimony or other proof concerning factual matters, the absence of a transcript or statement of the evidence can be a significant obstacle to meaningful appellate review.

4. If you wish to file a position statement, you must file it with the court clerk within *ten business days* after the deadline to file a transcript or statement of the evidence. The party opposing the appeal may file a response with the court clerk *within ten business days* after you file your position statement. All position statements should include: (1) a statement summarizing the facts of the case from the evidence admitted during the expedited hearing; (2) a statement summarizing the disposition of the case as a result of the expedited hearing; (3) a statement of the issue(s) presented for review; and (4) an argument, citing appropriate statutes, case law, or other authority.

*For self-represented litigants: Help from an Ombudsman is available at 800-332-2667.*



**EXPEDITED HEARING NOTICE OF APPEAL**
Tennessee Division of Workers' Compensation
www.tn.gov/labor-wfd/wcomp.shtml
wc.courtclerk@tn.gov
1-800-332-2667

Docket #: _____

State File #/YR: _____

**Employee** _____

v.

**Employer** _____

## Notice

Notice is given that _____

[List name(s) of all appealing party(ies) on separate sheet if necessary]

appeals the order(s) of the Court of Workers' Compensation Claims at _____

_____ to the Workers' Compensation Appeals

Board. [List the date(s) the order(s) was filed in the court clerk's office]

**Judge**_____

## Statement of the Issues

Provide a short and plain statement of the issues on appeal or basis for relief on appeal:

_____

_____

_____

## Additional Information

**Type of Case** [Check the most appropriate item]

☐  Temporary disability benefits
☐  Medical benefits for current injury
☐  Medical benefits under prior order issued by the Court

## List of Parties

**Appellant (Requesting Party):**_____ At Hearing: ☐Employer ☐Employee

Address:_____

Party's Phone:_____ Email:_____

Attorney's Name:_____ BPR#: _____

Attorney's Address:_____ Phone: _____

Attorney's City, State & Zip code:_____

Attorney's Email:_____

*\* Attach an additional sheet for each additional Appellant \**

Employee Name:_____ SF#:_____ DOI:_____

## Appellee(s)
**Appellee (Opposing Party):**_____ At Hearing: ☐ Employer ☐ Employee

Appellee's Address:_____

Appellee's Phone:_____Email:_____

Attorney's Name:_____ BPR#: _____

Attorney's Address:_____ Phone: _____

Attorney's City, State & Zip code: _____

Attorney's Email:_____

*\* Attach an additional sheet for each additional Appellee \**

## CERTIFICATE OF SERVICE

I,_____, certify that I have forwarded a true and exact copy of this
Expedited Hearing Notice of Appeal by First Class, United States Mail, postage prepaid, to all parties
and/or their attorneys in this case in accordance with Rule 0800-02-22.01(2) of the Tennessee Rules
of Board of Workers' Compensation Appeals on this the_____day of_____, 20 ___

[Signature of appellant or attorney for appellant]     _____



**Tennessee Bureau of Workers' Compensation**
**220 French Landing Drive, I-B**
**Nashville, TN 37243-1002**
**800-332-2667**

### AFFIDAVIT OF INDIGENCY

I, _____, having been duly sworn according to law, make oath that because of my poverty, I am unable to bear the costs of this appeal and request that the filing fee to appeal be waived. The following facts support my poverty.

1. Full Name:_____  2. Address: _____

3. Telephone Number: _____  4. Date of Birth: _____

5. Names and Ages of All Dependents:

    _____ Relationship: _____

    _____ Relationship: _____

    _____ Relationship: _____

    _____ Relationship: _____

6. I am employed by: _____

    My employer's address is: _____

    My employer's phone number is: _____

7. My present monthly household income, after federal income and social security taxes are deducted, is:

$ _____

8. I receive or expect to receive money from the following sources:

| | | | |
|---|---|---|---|
| AFDC | $ _____ per month | beginning _____ |
| SSI | $ _____ per month | beginning _____ |
| Retirement | $ _____ per month | beginning _____ |
| Disability | $ _____ per month | beginning _____ |
| Unemployment | $ _____ per month | beginning _____ |
| Worker's Comp. | $ _____ per month | beginning _____ |
| Other | $ _____ per month | beginning _____ |

9. My expenses are:

Rent/House Payment $ _____ per month    Medical/Dental  $ _____ per month

Groceries        $ _____ per month    Telephone       $ _____ per month

Electricity      $ _____ per month    School Supplies $ _____ per month

Water            $ _____ per month    Clothing        $ _____ per month

Gas              $ _____ per month    Child Care      $ _____ per month

Transportation   $ _____ per month    Child Support   $ _____ per month

Car              $_____ per month

Other            $ _____ per month (describe: _____ )

10. Assets:

Automobile            $ _____    (FMV) _____

Checking/Savings Acct. $ _____

House                 $ _____    (FMV) _____

Other                 $ _____    Describe:_____

11. My debts are:

Amount Owed                 To Whom

_____        _____

_____        _____

_____        _____

_____        _____

**I hereby declare under the penalty of perjury that the foregoing answers are true, correct, and complete and that I am financially unable to pay the costs of this appeal.**

_____
APPELLANT

Sworn and subscribed before me, a notary public, this

_____ day of _____, 20_____.

_____
NOTARY PUBLIC

My Commission Expires:_____